IN THE SUPREME COURT OF TEXAS








IN THE SUPREME COURT OF TEXAS
 
════════════
No. 04-0515
════════════
 
Stephen F. Austin State 
University, Petitioner,
 
v.
 
Diane Flynn, 
Respondent
 
════════════════════════════════════════════════════
On Petition for Review from the
Court of Appeals for the Twelfth District of 
Texas
════════════════════════════════════════════════════
 
 
Argued October 19, 
2006
 
 
Justice Medina delivered the opinion of 
the Court, in which Chief Justice Jefferson, Justice O’Neill, 
Justice Brister, Justice Green, and Justice Johnson joined, and in all but 
Part III of which Justice Hecht, Justice 
Wainwright, and Justice Willett joined. 
 
Justice Hecht filed a concurring 
opinion, in which Justice Wainwright and Justice Willett joined.
 
This 
interlocutory appeal concerns a trial court’s order denying Stephen F. Austin 
State University’s (SFA) plea to the 
jurisdiction and motion to dismiss. The court of appeals affirmed the order, 
holding that the Texas Tort Claims Act waived SFA’s 
sovereign immunity and that the recreational use statute did not apply. 202 
S.W.3d 167. Because we conclude that the recreational use statute does apply to 
this suit and does operate under the undisputed facts to bar the plaintiff’s 
claim here, we reverse the court of appeals’ judgment and render judgment 
dismissing the case.
I
The Lanana Creek Trail is a community trail open to the public 
for walking and cycling. Part of the trail crosses SFA’s campus, and the university has granted an easement to 
the City of Nacogdoches for this use. Diane Flynn was 
riding her bike on the trail, crossing the SFA campus, when she was hit by a 
stream of water from an oscillating sprinkler. The force of the water knocked 
her off her bike, causing her injury. The sprinkler was part of an in-ground 
irrigation system on SFA’s campus, and this particular 
sprinkler head was on SFA’s shot-put field about four 
feet from the trail.
Flynn sued 
SFA for damages under the Tort Claims Act, alleging that her injuries were 
proximately caused by SFA’s negligent use of real 
property, negligent operation of the premises, negligent activity, and gross 
negligence. SFA filed a plea to the jurisdiction and motion to dismiss, arguing 
that sovereign immunity had not been waived under the Tort Claims Act,[1] or, alternatively, that it was entitled 
to protection under the recreational use statute[2] because it had granted the public 
permission to use its property for recreational purposes.
The trial 
court denied SFA’s plea to the jurisdiction, and SFA 
perfected an interlocutory appeal. See Tex. Civ. Prac. & Rem. Code § 
51.014(a)(8). The court of appeals affirmed the trial court’s order, concluding 
that Flynn had sufficiently alleged a premises defect for which the Tort Claims 
Act waived sovereign immunity and that neither the discretionary powers 
exception to the Act nor the recreational use statute barred Flynn’s claim. 202 
S.W.3d at 175-76. SFA appeals, arguing again that its decision to install an 
irrigation system was a discretionary function within the bounds of the 
discretionary powers exception to the Tort Claims Act or, alternatively, that 
the recreational use statute protects it from liability.
II
            
Because this is an interlocutory appeal, we first consider the issue of 
our own jurisdiction. An interlocutory appeal is generally final in the court of 
appeals. Tex. Gov’t Code § 
22.225(b)(3). There are exceptions, however, such as when the court’s decision 
conflicts with a prior decision of another court of appeals or of this Court. 
Tex. Gov’t Code §§ 22.001(a)(2), 
22.225(c). Two decisions conflict for purposes of establishing our jurisdiction 
when the two are so similar that the decision in one is necessarily conclusive 
of the decision in the other.[3] 
            
SFA contends that we have jurisdiction because the court of appeals’ 
decision here conflicts with Guadalupe-Blanco River Authority v. Pitonyak, 84 S.W.3d 326 (Tex. App.–Corpus Christi 2002, 
no pet.). In that case, the Corpus Christi Court of Appeals rejected the 
contention that a governmental unit might control the premises for purposes of 
waiving immunity under the Tort Claims Act and yet not sufficiently control the 
premises for purposes of the recreational use statute. See id. at 339-40. 

            
The case concerned two men who drowned while boating in a bayou. Their 
survivors sued the state river authority whose jurisdiction included the bayou. 
The authority filed a plea to the jurisdiction which the trial court denied. 
Id. at 
326. The court of appeals reversed, holding that the recreational use statute 
applied to protect the authority from liability even though the survivors 
pleaded a premises defect claim sufficient to support a waiver of immunity under 
the Tort Claims Act. Id. at 339-40, 45. The survivors 
argued that the recreational use statue did not apply because the bayou was a 
navigable waterway owned by the State, not the authority, and ultimately under 
the State’s control. The court of appeals rejected as inconsistent the argument 
that the authority could be the relevant premises owner for purposes of the Tort 
Claims Act but not for purposes of the recreational use statute. Id. at 340.
            
In this case, the court of appeals has taken a position similar to the 
argument rejected in Guadalupe-Blanco River Authority. The court here 
recognizes SFA as the owner of the defective premises for purposes of waiver 
under the Tort Claims Act, but redefines the premises for purposes of the 
recreational use statute. 202 S.W.3d at 175. This conflict is sufficient to 
invoke our jurisdiction. See Henry Schein, Inc. v. 
Stromboe, 102 S.W.3d 675, 689 (Tex. 2003) (concluding 
that one court need not expressly disavow the other court's decision for 
conflicts jurisdiction to exist). We turn then to the merits of this appeal.
III
            
The Tort Claims Act generally waives the state’s immunity from suit for 
certain tort claims involving automobiles, premises defects, or the condition or 
use of property. See Tex. Civ. Prac. 
& Rem. Code §§ 101.001(3)(A)-(B), 101.021, 101.022, 101.025; 
County of Cameron v. Brown, 80 S.W.3d 549, 554 (Tex. 2002). Even under 
these circumstances, however, the Act preserves immunity for discretionary 
decisions under the “discretionary powers” exception to the waiver. Tex. Civ. Prac. & Rem. Code § 
101.056. The exception’s purpose is to avoid judicial review or interference 
with those policy decisions committed to the other branches of government. 
Terrell v. State, 588 S.W.2d 784, 787 (Tex. 1979). The provision generally preserves 
immunity not only for the state’s public policy decisions, but also for the 
state’s failure to act, when no particular action is required by law. See 
Tex. Civ. Prac. & Rem. Code 
§ 101.056; see also State of Texas v. San Miguel, 2 S.W.3d 249, 250-51 (Tex. 1999).
            
When the government in the exercise of its discretion decides to act, 
however, a distinction is drawn between the negligent formulation of policy, for 
which sovereign immunity is preserved, and the negligent implementation of 
policy, for which immunity is waived. See Terrell, 588 S.W.2d at 788; 
see also City of Brownsville v. Alvarado, 897 
S.W.2d 750, 754 (Tex. 1995). This determination is a question 
of law. State v. Rodriguez, 985 S.W.2d 83, 85 (Tex. 1999).
            
The court of appeals concluded that SFA’s 
decision to irrigate its campus was a policy decision for which immunity was 
preserved, but that Flynn’s complaint about SFA’s 
operation of the irrigation system over the trail during peak periods of public 
use was the negligent implementation of that policy. 202 S.W.3d at 176. SFA 
argues, however, that it retained immunity because the design of its irrigation 
system, including the placement of sprinkler heads, the force of the water, and 
the pattern of the spray were all discretionary decisions, involving the design 
of a public work. SFA equates its irrigation system to the design of a public 
highway and its safety features, which have been construed to be policy 
formulation rather than implementation. See State of Texas v. 
Miguel, 2 S.W.3d 249, 251 (Tex. 1999). 
            
We have more than one test “for determining when questioned conduct 
involves a protected ‘discretionary’ determination.” 19 William V. Dorsaneo III, Texas Litigation Guide § 293.12[7] 
(2007). One such test distinguishes between policy-level decisions and 
operational-level decisions. See, e.g., Terrell, 588 S.W.2d at 788. Under 
this test, one court has observed that the decision to release water from a 
spillway constitutes policy formulation for which the water district is immune, 
but that the subordinate decision of determining the volume of the outflow is 
policy implementation for which the district is not immune. Bennett v. 
Tarrant County Water Control & Improvement Dist. No. 1, 894 S.W.2d 441, 
452 (Tex. App.–Fort Worth 1995, writ denied). Another test distinguishes the 
design of public works, for which there is immunity, from their maintenance, for 
which there is not immunity. See, e.g., County of Cameron, 80 S.W.3d at 
558. Thus, while the government is not liable for designing a bridge without 
lighting, it may be liable for failing to maintain the lighting on a bridge 
designed to be illuminated. Compare Tarrant County Water Control v. Crossland, 781 S.W.2d 427, 433 (Tex. App.–Fort Worth 
1989, writ denied), with County of Cameron, 80 S.W.3d at 558.
            
The court of appeals correctly concluded that the decisions here 
concerning when and where the water was to spray were operational- or 
maintenance-level decisions, rather than policy formulation. 202 S.W.3d at 176. 
Thus, the acts that allegedly caused Flynn’s injury fall outside the scope of 
the discretionary powers exception.
IV
A
            
SFA also argues that Flynn’s present claim is barred by the recreational 
use statute. See Tex. Civ. Prac. 
& Rem. Code §§ 75.001-.004. The recreational use statute recognizes 
that landowners or occupiers, who open their property to the public for 
recreational purposes, provide a public benefit. To encourage this use, the 
statute limits the liability of the “owner, lessee, or occupant of real 
property” who “gives permission to another to enter the premises for 
recreation.” Id. § 75.002(c). By dedicating this 
easement for use as a recreational trail, SFA argues, it gave the public, 
including Flynn, permission to use a part of its campus for recreation and is 
therefore entitled to the statute’s protection.
            
The court of appeals disagreed, however, concluding that by granting the 
City of Nacogdoches an easement through its campus, SFA 
forfeited its control over those who might use the trail for recreational 
purposes and thereby gave up the statute’s protection. 202 S.W.3d at 175. The 
court reasoned that: (1) by granting an easement over its campus, SFA ceased to 
be a member of the class protected by the recreational use statute; i.e., ceased 
to be an owner or occupier of the land in question; and (2) Flynn did not need 
SFA’s permission to use the trail because SFA did not 
own or control the land at the time of her use. Id. at 174-75. We disagree with both of 
these reasons. 
            
First, we disagree that the easement removed SFA from the protection of 
the recreational use statute. An easement does not convey title to property. 
Marcus Cable Assocs. v. Krohn, 90 S.W.3d 697, 
700 (Tex. 
2002). It is instead a “nonpossessory interest that 
authorizes its holder to use the property for only particular purposes.” 
Id. 
(citing Restatement (Third) of Property 
(Servitudes) § 1.2 cmt. d). Thus, even though 
SFA dedicated a public easement over its campus for use as a recreational trail, 
it retained ownership of the underlying fee, and, as the owner of the property, 
SFA retained its status as a member of the class protected by the recreational 
use statute.
            
We also disagree that Flynn’s use of the recreational trail was without 
SFA’s permission or that SFA’s permission was unnecessary. Although the recreational 
use statute provides that an owner of real property is entitled to the statute’s 
protection when it gives “permission to another to enter for recreation,” the 
statute does not specify how that permission is to be granted. Tex. Civ. Prac. & Rem. Code § 
75.002(c). Nor does the statute require that the landowner contemporaneously 
acknowledge each use. Permission may instead be implied from a landowner’s 
knowledge of, and acquiescence in, the public’s use of its land for recreational 
purposes. See, e.g., Gulf, C. & S.F. Ry. Co. v. 
Matthews, 88 S.W. 192, 197 (Tex. 1905) (a trespass tolerated for a 
sufficient period of time that the public believes it has the permission to use 
the property). 
            
It would be perverse to hold the formal dedication in this case 
insufficient, particularly since recreation was the reason for the dedication of 
the easement in the first place. Indeed, to construe the statute so narrowly as 
to exclude SFA under these circumstances would be contrary to the statute’s 
purpose of encouraging landowners to open their land for recreational use by 
limiting their liability. See 
State v. Shumake, 199 S.W.3d 279, 284 (Tex. 2006). Accordingly, 
we hold that a landowner who dedicates a public easement for recreational 
purposes is entitled to the protection of the recreational use statute. See 
Urban v. Grasser, 627 N.W.2d 511 (Wis. 
2001) (applying Wisconsin’s recreational use statute to 
protect landowners who grant easements for recreational purposes).
B
            
The statute protects the landowner by providing that one who permits the 
use of its land for recreation does not assure that the premises are safe for 
recreational purposes and does not assume responsibility for the actions of 
those admitted to the property. Tex. 
Civ. Prac. & Rem. Code § 75.002(c)(1), (3). The statute further 
protects the landowner from liability associated with the recreational use of 
real property by elevating the plaintiff’s burden of proof. Id. § 
75.002(c)(2), (d). The statute effectively requires for liability either gross 
negligence or an intent to injure. See id. § 75.002(d) (“owner, lessee, 
or occupant” must be “grossly negligent” or “act[] with malicious intent or in 
bad faith”); see also Shumake,199 S.W.3d at 286-87.
            
Here, Flynn generally alleges gross negligence. In her brief to this 
Court, Flynn asserts “that SFA knew that the use of the sprinkler in the manner 
and at the time of said use posed a risk of serious injury to others, including 
the Plaintiff, but that SFA was grossly negligent in ignoring and creating that 
risk.” Flynn’s response to SFA’s plea to the 
jurisdiction and motion to dismiss provides no additional facts to support her 
claim of gross negligence. SFA asserted in its plea and motion that Flynn’s 
allegations of gross negligence were conclusory and a 
sham, attaching the deposition testimony of both Flynn and her husband.
            
Flynn’s husband, Matthew, was also riding his bike on the day of the 
accident. When biking with his wife, he ordinarily rode ahead, periodically 
turning back to check on her progress. He therefore was the first to encounter 
the sprinkler on SFA’s property. 
            
Matthew noticed the sprinkler oscillating in a clockwise direction as he 
approached SFA’s shot-put field. He estimated that the 
sprinkler to be about four feet off the trail, arcing a stream of water 
approximately 15 to 20 feet into the air. Approaching the sprinkler, he ducked 
under the water arc and continued on his ride. He apparently did not view the 
sprinkler to be a sufficient threat either to stop or to go back to warn his 
wife.
            
As Flynn approached the shot-put field her husband was already out of 
sight. She also noticed the sprinkler and its water arc about nine or ten 
seconds ahead near the trail. It was her habit to focus attention on the trail 
about two or three feet ahead of her bike, however, and she did not again notice 
the sprinkler until she was almost upon it. She tried to veer away, but it was 
too late, and the water knocked her to the ground. 
            
In Shumake, we held that the 
recreational use statute does not foreclose premises defect claims, but rather 
limits the landowner’s liability by raising the plaintiff’s burden of proof to 
that of gross negligence, malicious intent, or bad faith. Shumake, 199 S.W.3d at 285-87. We further emphasized 
that the statute’s liability limitations should have meaning. Thus, we observed 
that landowners have no duty to warn or protect recreational users from defects 
or conditions that are open and obvious. Id. at 288. Moreover, we 
observed that gross negligence is not synonymous with negligence, but rather 
requires the existence of an extreme risk of serious injury or death, evaluated 
both objectively and subjectively. Id. at 287. 
            
The Legislature has defined gross negligence as an act or omission: (1) 
“which when viewed objectively from the standpoint of the actor at the time of 
its occurrence, involves an extreme degree of risk, considering the probability 
and magnitude of the potential harm to others; and” (2) “of which the actor has 
actual, subjective awareness of the risk involved, but nevertheless proceeds 
with conscious indifference to the rights, safety, or welfare of others.” Tex. Civ. Prac. & Rem. Code § 
41.001(11). The allegations in this case fail to demonstrate either that the 
sprinkler presented an extreme risk, that SFA was aware of the risk, or that SFA 
was consciously indifferent to the sprinkler’s capacity to inflict serious 
injury. Moreover, Flynn concedes that she was aware of the sprinkler before she 
encountered it, and as we have already mentioned, the recreational use statute 
does not obligate a landowner to warn of known conditions. See Tex. Civ. Prac. & Rem. Code § 
75.002(c)(2) (classifying recreational user as trespasser); cf. State Dep’t 
of Pub. Highways & Pub. Transp. v. Payne, 838 
S.W.2d 235, 237 (Tex. 1992) (noting that for premises liability even licensee 
must prove no actual knowledge of the condition). Accordingly, we agree with SFA 
that Flynn’s conclusory allegations of gross 
negligence are not sufficient to meet the standard imposed by the recreational 
use statute or to rebut the evidence attached to SFA’s 
motion to dismiss.
            
In Miranda, we recognized similar deficiencies to be more than 
mere defects in pleading because they involve the state’s sovereign immunity. 
Tex. Dep’t of Parks & Wildlife v. Miranda, 133 S.W.3d 217, 227-28 
(Tex. 2004). We further noted that because the recreational use statute modifies 
the Tort Claims Act’s waiver of sovereign immunity, it is properly part of the 
government’s plea to the jurisdiction and thus part of the interlocutory appeal. 
Id. at 224-25; see also Tex. Civ. Prac. & Rem. Code § 
51.014(a)(8) (granting governmental unit right to interlocutory appeal from 
denial of a plea to the jurisdiction). Here, the court of appeals erred in 
rejecting SFA’s plea under the recreational use 
statute because no material factual dispute exists regarding its application in 
this case. Because the statute applies and operates under the undisputed facts 
to bar Flynn’s claim, we reverse the court of appeals’ judgment and render 
judgment dismissing the case.
 
            
____________________________________
            
David M. Medina
            
Justice
 
 
Opinion 
delivered:         June 29, 2007








[1] 
See Tex. Civ. Prac. & Rem. 
Code §§ 101.021, 101.056.

[2] 
See Tex. Civ. Prac. & Rem. 
Code §§ 75.001 - .004.

[3] 
In 2003, the Legislature broadened this Court’s jurisdiction over interlocutory 
appeals by redefining conflicting decisions to include an “inconsistency in 
their respective decisions that should be clarified to remove unnecessary 
uncertainty in the law and unfairness to litigants.” Tex. Gov’t Code § 22.225(e). This case 
was filed before the effective date of that legislation and thus our former 
definition applies. See, e.g., Tex. Dep’t of Parks & 
Wildlife v. Miranda, 133 S.W.3d 217, 223 (Tex. 
2004).